J-S63028-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CARLOS ALBERTO ACOSTA, JR. | |
| Appellee | No. 785 MDA 2014 |

Appeal from the Order May 2, 2014
In the Court of Common Pleas of Clinton County
Criminal Division at No(s): CP-18-CR-0000461-2013

BEFORE:  BOWES, J., PANELLA, J., and PLATT, J.[*]

MEMORANDUM BY PANELLA, J.                **FILED NOVEMBER 13, 2014**

The Commonwealth appeals from the order entered on May 2, 2014, in the Court of Common Pleas of Clinton County, which granted the suppression motion of Appellee, Carlos Alberto Acosta, Jr.[1]

The disposition of this appeal turns on whether state troopers conducted a lawful traffic stop.  The stop led to the recovery of heroin from Acosta.  How the troopers recovered the heroin is not pertinent here.  We

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] This appeal is permissible as the Commonwealth has certified in good faith that the order submitted for our review substantially handicaps the prosecution and the appeal is not intended for delay purposes.  ***See*** Pa.R.A.P., Rule 311(d); ***Commonwealth v. Dugger****,* 486 A.2d 382 (Pa. 1985).

are solely concerned with the stop. If the stop was unlawful, as the suppression court found, the troopers illegally seized Acosta and we must affirm the suppression court's decision to suppress the evidence. If the stop was lawful, as the Commonwealth maintains, we must reverse the suppression court and remand. We conclude that the suppression court erred and, accordingly, reverse the suppression order.

The parties are familiar with the underlying factual and procedural history of this case so we set forth only the facts and procedural history relevant to our determination.

Trooper Kenneth Riggle and his partner were on patrol when at approximately 1:00 AM he observed a vehicle, the driver of which was later identified as Acosta, traveling south on State Route 150. The vehicle then began to turn onto Pennsylvania Avenue. The vehicle's turn onto Pennsylvania Avenue caught Trooper Riggle's attention. As he explained at the suppression hearing:

> The vehicle, when it made it's [sic] left turn onto Pennsylvania Avenue, to me, it took a wide turn; and it was headed toward – there's a business there, Curt's Smokin' Ribs. It looked as though the vehicle was going to drive into the grass area. The vehicle slowed down almost to a stop, corrected, and then turned sharp left to get onto Pennsylvania Avenue.

N.T., Suppression Hearing, 4/28/14, at 6. The sharp turn was necessary because if the vehicle stayed straight it would have ended up in the grass. Trooper Riggle "suspected it could have been a DUI" given the fact that the vehicle looked like it was "going to drive off the roadway" coupled with the

- 2 -

"wide turn." *Id*., at 9-10. Trooper Riggle activated his cruiser's overhead lights and pulled the vehicle over. As Acosta pulled over, he failed to use his turn signal.

At the suppression hearing, Trooper Riggle cited the suspected driving under the influence and failure to use a turn signal as the reasons for the traffic stop. *See id*., at 9. Focusing solely on the failure to use the traffic signal, the suppression court ruled that the stop was illegal, as "Trooper Riggle did not observe any other violations of the vehicle code…." Suppression Court Opinion, 5/2/14, at 3. The suppression court reasoned that the traffic signal violation could not serve as the basis for the stop as Trooper Riggle was already in the process of initiating the stop when that violation occurred. *See* N.T., Suppression Hearing, 4/28/14, at 24. This reasoning is sound. But the trooper testified that he pulled Acosta over for *two* reasons—the other being that he suspected the driver of being under the influence. Oddly, the suppression court does not reference, at all, the trooper's testimony that he suspected that Acosta was driving under the influence. Finding no vehicle code violation to justify the stop, the suppression court granted the suppression motion, suppressing "any and all evidence seized, observed and/or obtained by the Commonwealth after the stop of Defendant's vehicle…." Order, 5/2/14. This timely appeal followed.

Our standard and scope of review of the grant of a suppression motion is as follows.

We begin by noting that where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. If so, we are bound by those findings. Where, as here, it is the Commonwealth who is appealing the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted.

Moreover, if the evidence supports the factual findings of the suppression court, this Court will reverse only if there is an error in the legal conclusions drawn from those findings.

*Commonwealth v. Burgos*, 64 A.3d 641, 647 (Pa. Super. 2013) (citation omitted).

As noted, Trooper Riggle conducted a traffic stop as he suspected Acosta was driving under the influence. "[B]ecause of the severe consequences of drunken driving in terms of roadway deaths, injuries, and property damage, ... the government has a compelling interest in detecting intoxicated drivers and removing them from the roads before they cause injury." *Commonwealth v. Basinger*, 982 A.2d 121, 124-125 (Pa. Super. 2009) (citation omitted). This is why the legislature provided for the standard of "reasonable suspicion" rather than the heightened standard of "probable cause" in Section 6308(b) of the Motor Vehicle Code as the threshold for conducting a lawful traffic stop. *See id*., at 125. *See also Commonwealth v. Brown*, 64 A.3d 1101, 1105 (Pa. Super. 2013) ("A police officer has the authority to stop a vehicle when he or she has

reasonable suspicion that a violation of the vehicle code has taken place, for the purpose of obtaining necessary information to enforce the provisions of the code.") (emphasis omitted).

The standard for establishing reasonable suspicion is as follows.

[T]he officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. The question of whether reasonable suspicion existed at the time [the officer conducted the stop] must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a particularized and objective basis for suspecting the individual stopped. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the [stop] warrant a man of reasonable caution in the belief that the action taken was appropriate.

*Basinger*, 982 A.2d at 125 (internal citations and quotation marks omitted; some brackets added).

Here, Trooper Riggle articulated specific observations, which led him to conclude that the driver of the vehicle may have been involved in criminal activity, namely driving under the influence in violation of 75 Pa.C.S.A. § 3802. He possessed reasonable suspicion to conduct a lawful traffic stop.

As a trooper for twenty-one years, with a familiarity of observing people driving under the influence, Trooper Riggle testified that Acosta's erratic driving, set forth in detail above, led him to suspect impaired driving. "[E]rratic driving provides a sufficient, reasonable basis to support an

investigatory stop." ***Commonwealth v. Hamme***, 583 A.2d 1245, 1247 (Pa. Super. 1990) (citation omitted).

The suppression court's legal conclusion that Trooper Riggle failed to possess reasonable suspicion to conduct a lawful traffic stop is erroneous. Accordingly, we reverse the order.

Order reversed. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/2014